Good morning. May it please the court. I'm Philip Smith, pro bono counsel for the plaintiff and appellant Joseph Hirsch, who asserted section 1983 claims against Suffolk County and two New York state corrections officers. This is an appeal from the district court summary judgment in favor of the government defendants dismissing Hirsch's claims. The defendants misrepresented Hirsch's criminal conduct from the non-consensual sexual touching for which he was convicted to labeling him a rapist. As a consequence, when he began a sex offender counseling program in prison, he was told that he would have to admit to raping the complainant to participate in the program. He was completely shocked. He told defendant Katherine Purnatt that he was never charged, much less convicted of rape, and she told him it wasn't her his admission could lead to further prosecution. Thus, he was faced with the Hobson's choice of either not participating in the sex offender program and losing 10 months of good time credit or participating in the program, being forced to admit to a crime he never committed. But didn't he refuse to admit to any crime, including the ones of which he was convicted? That that's not there's no clear evidence that he took that the evidence that I'm not guilty of any crime and I have no prior criminal record. I have no prior criminal record and I'm innocent of my instant offense. This was these were statements that were made after he was, uh, accused of a fabricated rape charge. So he was including those statements, these additional, uh, allegations against him. Moreover, the central issue is whether he was prepared to, uh, take responsibility for the conduct for which he was convicted in the context of the sex offender program. Not, you know, he maintained his innocence. He was entitled to pursue his appeals, but he was going to have to admit to some conduct. Otherwise, he wouldn't successfully complete the program. State said that your client acknowledged in his deposition that the intake interview, he said, I did not commit these crimes, the crimes of conviction and I plan to appeal at his intake interview at the beginning of his incarceration. Yes. Am I wrong about that? I don't I believe that is incorrect. Um, so he so to the best of my reading of the record, he did not admit even to the crimes of which he was convicted, not because he had not yet entered the program where in a therapeutic context, he would be able to do that in a in a controlled way. Uh, those statements were also, as I, as I was menacing, stalking all these other things that weren't actually part of his criminal record. So he was, uh, he's also not a lawyer. He was also saying I shouldn't be required to wave my Fifth Amendment rights, which would make no sense if he was talking about crimes for which he was already convicted. Would you concede that if, hypothetically, he said, um, I didn't commit the crime for which I was ineligible for the program? If he did that during the program, well, he couldn't have gotten into the program without admitting that that's that's not my understanding of the way the program works. Uh, there's no test before the program. What he did say was, uh, the, uh, the came when Defendant Pernatt said, You have to admit to this rape charge or you will not get in. And he said, I'm not going to do that because I was never charged with that. I wasn't convicted. Check your records. And she said, you know, that's not my problem. Did you have to admit to in order to get into the program? You didn't have to admit to anything. I think what happened was she said, You're not going to get through this program unless you're prepared to admit to this. So we actually ended up signing a refusal form. So once you get into the program, you might be asked about that, and you're expected to be forthcoming. And he unequivocally testified. It's in his declaration that he knew exactly what he was doing, which is he transferred to this prison, a different prison to take this program. He knew that to successfully complete it and get his 10 months of good time credit, he would have to admit to certain things, no matter how distasteful he was going to do it. Now, you know, uh, if he'd gotten in the program and he wasn't sincere enough, you know, he might have failed. But that's just speculation. And remember that the time allowance committee that, uh, and the board of his purported refusal to participate in the program, which he couldn't do because of the rape charge. Uh, they didn't look at these other pieces of evidence. So it required the district court to kind of speculate as to what those bodies would have done had they seen the entire picture, which is he refused to participate in the program because he couldn't admit to the rape. They didn't look at these other extraneous, uh, pieces that were taken out of context. Uh, and again, it's the evidence he gave, and it was, uh, not rebutted by any admissions by him outside of those equivocal letters that he was going to do what it took to get through that program. Okay. Did your client ever seek to correct the information in the pre sentence report? I know it wasn't. It wasn't objected to it. The sentencing itself. But while he was in prison, he tried to get his family to, you know, engage a lawyer to do that. He was not successful. In fact, he never saw the pre sentencing report until after he got out. So, um, he didn't see it at sentencing. No, he did not. Lawyer never showed it to him. He did not. When he was asked by the judge, the lawyer, whether he had shown it to him. Did the lawyer lie? I have not seen a record of where the, uh, lawyer represented that he had shown his client the pre sentencing report standard colloquy. And have you shown this? Have you discussed it with your client? He had not seen it. He had not seen it. In fact, he was unaware of a number of parts of the pre sentencing report were objected to by his lawyer and were ordered stricken by the trial judge. That never happened. And so that unreacted pre sentencing report ended up in the correctional system in New York State. So is there a cognate in the, um, criminal procedure law for federal rule 11, which requires a fairly extensive, you know, colloquy in connection with sentencing? And one of the issue, one of the things that has to be covered is whether you've gone over the pre sentence report. Uh, in in the state proceeding under state procedures. Is there anything like that? I don't recall seeing anything like that in the record here. The only thing I saw was the, uh, colloquy between the defense counsel and the court about striking parts of the pre sentencing report. No, uh, allocution or something like that by the by Mr Hirsch. You have reserved two minutes for rebuttal. You're from, um, Suffolk County and Catherine Purnett. Um, same lawyers representing all defendant parties. Correct. Take the microphone. May it please the court. Valerie Figueredo. On behalf of the state appellees, Purnett and Tortoro, Suffolk County is represented separately, and they have submitted. They're not. They're not arguing today. Someone who's not going to argue today, though, correct? That's correct. There are multiple independent reasons for affirming the district court's grant of summary judgment in favor of Purnett and Tortoro. First, Hirsch does not raise a meritorious due process challenge. Both determinations concerning the denial of good time credits and his risk level designation were correct, and Hirsch had adequate procedural safeguards under state law to challenge those determinations. Moreover, Hirsch's claims fail at the outset because both defendants are entitled to qualified immunity. As to Tortoro, the claims are untimely, and neither defendant had any articulable connection to the determinations he challenges here. I want to first address a response to a question posed by Judge Livingston. Had did Hirsch in his deposition testify as to whether he had, in the intake interview with defendant Tortoro, had acknowledged that he was guilty of even the crime he had committed? And I quote, the question was, the answer he gave in his deposition, this is at page 62 of the joint appendix, is, if I had committed the crime that I was charged with, I told him I did not. I pled not guilty. It went to trial. In addition to his statements at his deposition, there's ample evidence in the record dating back to 2002 demonstrating that Hirsch at no point accepted responsibility for any crime, even those for which he was convicted by a jury. If you go back to the statement he made when he refused to consent to sex offender treatment, that was in 2006. He said, I am not guilty of any crime. The board, when it was determining both the denial of the good time credits and the risk level determination, had this information in from the board of sex examiners case summary, where they acknowledge that Hirsch has maintained his innocence, although convicted by a jury of his peers. And that's at page 164 of the record. There is also no, this doesn't even go to the alleged fabricated rape charge. He didn't acknowledge any responsibility. That's correct. He didn't acknowledge responsibility for the crime for which he was convicted. And on that basis alone, the board was even with those 10 points, he would still be a level two sex offender. And thus there was no, there was no change in the score. So there was no due process violation there. And that score, that risk level determination was challenged in state court. Again, he went before Supreme Court and this is at 168 of the record where Supreme Court acknowledges that Hirsch has, and I quote, repeated past and present refusal to accept responsibility for his crimes. So it's undisputed that the district court, there was no material issue of fact as to his acceptance of responsibility. And on that basis alone, there's no, there's no evidence, um, to support the due process claim. If the court doesn't want to reach the merits, I, for the reasons explained in our brief, they could affirm the district court's grant of summary judgment on either the qualified immunity or the untimeliness grounds. Could you address the, um, the, whether there's a federal constitutional right to good time credit? There, there is no, uh, there's no protected liberty interest in good time credits. That's clear from this court's decision in Abbott v. Armstrong. There's also no, uh, liberty interest in parole. We know that from Graziano. The, the state statute that discusses good time credits, New York Correctional Law 803 clearly says that good time credits may be granted or may be withheld. There's no, there's no requirements. It's a completely discretionary decision. In this, in this instance, Hirsch had the opportunity to challenge the denial of the good time credits. He filed a, he filed an appeal of that, uh, denial and exhausted his, the available state remedies. If there are no further questions, we ask the court to affirm for the reasons stated in our brief. Thank you. Thank you, counsel. Mr Smith, you have two minutes. I wish to just briefly address the issue of whether there is any constitutionally protected interest in good time credits. Um, the, uh, this court in Rodriguez v. Greenfield and in Graziano v. Pataki stated or suggested without deciding whether it actually applied in the, in that there was a minimal due process interest in having a, uh, parole decision made free of arbitrary and capricious, you know, conduct on the part of the decision makers. But I, I think, why if he wasn't offered the opportunity to get into this program, but since he was, I don't see how an analogy to Graziano works at all. He, he, the reason why he didn't participate in the program again is because he was told that if he admitted to rape, he could be prosecuted for it. So he refused to do that. And that's why. So the, uh, the approximate cause of this constitutional injury is the defendant's arbitrary and capricious fabrication of a rape charge. Uh, I never, as opposing counsel suggested, um, appeal those decisions at the time they were made. That is the definition of the rape, the alleged fabricated rape charge, how it was transmogrified from penetration to rape. Did he ever at any time appeal those through the prison authorities? He assumed, uh, until probably until I got involved in the case that those charges had been created by Suffolk County. Uh, he was told that, uh, by Pernat in prison that he, uh, was accused of rape, but he didn't know who created that. He thought it was Suffolk County. Um, and so he, his appeals were internal at the prison. He went to the grievance committee, but he didn't articulate how this whole thing had come about. He just said that his records were incorrect, but he didn't take any specific appeals. He wouldn't need an attorney to do that. Um, I just wanted to touch on the good time credits liberty interest issue again. I think it's a bit of a red herring that I the government sites and the district court cited deal with, uh, uh, whether the decision makers for parole or good time credits properly exercised their discretion, took into account the specified factors in the governing statutes. Our cases is different than that. Our case is more akin to, uh, the a deprivation of the due process right, uh, in a disciplinary context, which then is relied upon by the decision makers for good time credits. That case actually did involve good time credits and the court found that the defendant had stated in 1983 case for denial of good time credits based on a faulty earlier disciplinary, uh, proceeding. And I think that that's a little bit more akin to our case. We're not challenging the exercise of discretion by the time allowance committee in the prison. They said you didn't participate in the program. You're not going to get your credit, but they didn't know why he didn't participate in this, uh, counseling program. Thank you. Thank you. Thank you for